

**SIGNED this 03rd day of November, 2011.**

_____
**JOHN C. AKARD**
**UNITED STATES BANKRUPTCY JUDGE**

_____

# United States Bankruptcy Court

**Western District of Texas**
**San Antonio Division**

| | |
|---|---|
| IN RE: | BANKR. CASE NO. |
| BRIAN MARTIN HICKERT | 10-52541 |
| *DEBTOR* | CHAPTER 13 |

**MEMORANDUM OF OPINION AND ORDER**
**ON OBJECTION TO THE CLAIM OF LISA MCCAFFREY**

Brian Martin Hickert (Mr. Hickert) and Lisa McCaffrey (Ms. McCaffrey) were formerly husband and wife. They were divorced by judgment in Cause No. 2009-CI-16195 of the 408th Judicial District Court of Bexar County, Texas. The Final Decree of Divorce was pronounced, rendered and noted on the court's docket sheet on April 1, 2010 but not signed until June 29, 2010 [Exhibit D-1 at page 16]. A transcript of the court's oral ruling is Exhibit D-10.

Mr. Hickert filed for a personal reorganization under Chapter 13 of the Bankruptcy Code on July 3, 2010 in the captioned case. Approximately a year later, Ms. McCaffrey filed a liquidation proceeding under Chapter 7 of the Bankruptcy Code on July 11, 2011 in Case No. 11-

1

52415.  Her case was converted to Chapter 13 on July 14, 2011.  Her case was summarily dismissed on October 31, 2011 because she failed to attend the First Meeting of Creditors. Apparently she does not desire to proceed with a personal reorganization because at the objection to claim hearing she stated that she was going to dismiss her Chapter 13 case.

On November 9, 2010, Ms. McCaffrey filed a claim in Mr. Hickert's Chapter 13 case for $161,296.67.  It is Claim No. 13-1 on the Clerk's Claim Docket [Exhibit D-4].  She filed an amended claim on December 13, 2010 for the same amount and asserted that $70,880.68 of the claim is entitled to priority as a domestic support obligation.  A copy of the Decree of Divorce is attached to the claim [Claim 13-2 and Exhibit D-5].  The claim contained a listing of items and amounts.  The total of the amounts came to the total amount of the claim; however there was no indication of the items which she thought were domestic support obligations.  Her claim for attorney's fees in the amount of $69,709.00 and "Medical Co-Pays" in the amount of $1,171.68 are apparently the items she thinks are domestic support obligations because the total of those two is $70,880.68.

On March 21, 2011, Mr. Hickert filed an objection to Ms. McCaffrey's claim [Docket No. 65].  The objection opposes most items in the listing for various reasons.  It also asserts that the claim is subject to setoff for the value of over $10,160 in items which he was to receive under the Decree of Divorce but has not received; those items are not itemized.  Ms. McCaffrey's response filed on April 4, 2011 [Docket No. 69] is no help because it simply denies each allegation without explaining the reason for the denial and without responding to the allegations of the objection.

After several postponements, a hearing on Mr. Hickert's objection to Ms. McCaffrey's claim was held on October 11, 2011.  Mr. Hickert and Ms. McCaffrey were the only persons who testified at the hearing.

Standards for Review of Claims

In order to receive a distribution in a Bankruptcy Case, a party must file a proof of claim. A filed claim is deemed allowed unless a party in interest objects.  If an objection is filed, the court determines the amount of the claim §§ 501 and 502.[1]  A claim filed in accordance with the Federal Rules of Bankruptcy Procedure constitutes prima facie evidence of the validity of the claim.  Rule 3002(f).[2]

The court will review each of Mr. Hickert's objections and the evidence related to that objection.

Attorney's Fees:  Mr. Hickert's first objection is:

[Mr. Hickert] objects to the inclusion of $69,709.00 in attorney's fees as a priority claim and/or general unsecured claim in [Mr. Hickert's] present Chapter 13 Case.  [Mr.

---

[1] The Bankruptcy Code is 11 United States Code §101 *et.seq.*  References to section numbers are to the Bankruptcy Code unless otherwise identified.

[2] References to Rules are to the Federal Rules of Bankruptcy Procedure unless otherwise specified.

Hickert's] divorce decree – attached as an exhibit to POC 13-2 – clearly states that [Ms. McCaffrey] would be responsible for her own attorney's fees, except, the $40,907.55 which was awarded as a judgment belonging directly to Langley & Banack, Inc. against [Mr. Hickert]. *See Divorce Decree, pg # 10.* It is evident that the divorce decree intended to relieve Lisa McCaffrey of any responsibility for the above amount, given that, there is no hold harmless provision relating to said award and that said amount was awarded as a direct judgment held solely by Langley & Banack, Inc. against [Mr. Hickert]. Further, said direct award of attorney's fees to Langley & Banack, Inc. against [Mr. Hickert] cannot qualify as a domestic support obligation belonging to [Ms. McCaffrey] given that Lisa McCaffrey never had to pay this amount and is no longer liable to Langley & Banack, Inc. for the amount awarded directly against [Mr. Hickert]. As such, [Ms. McCaffrey] has no standing or right to include the judgment awarded directly to Langley & Banack, Inc. against [Mr. Hickert] in her own proof of claim, much less, to request that said amount be deemed a priority domestic support obligation.

Section 106.002 of the Texas Family Code reads as follows:

(a) In a suit under this title, the court may render judgment for reasonable attorney's fees and expenses and order the judgment and postjudgment interest to be paid directly to an attorney.
(b) A judgment for attorney's fees and expenses may be enforced in the attorney's name by any means available for the enforcement of a judgment for debt.

TEX. FAM. CODE §106.002.

The following language appears on pages 10 and 11 of the Decree of Divorce:

The Court finds that LISA McCAFFREY HICKERT has incurred attorney's fees, expenses, and costs, which are necessary as support for LISA McCAFFREY HICKERT and the children the subject of this suit. IT IS ORDERED that the law firm of LANGLEY & BENACK, INC. is awarded a judgment in the amount of $40,907.55 for attorney's fees, expenses, and costs, with interest at 5 percent per year compounded annually from the date this Final Decree of Divorce is signed until paid. The judgment, for which let execution issue, is awarded against BRIAN MARTIN HICKERT, and BRIAN MARTIN HICKERT is ORDERED to pay said fees and applicable interest to LANGLEY & BANACK, INC. at 745 East Mulberry, Suite 900, San Antonio, Texas 78212 by cash, cashier's check, or money order. LANGLEY & BANACK, INC may enforce this judgment for fees, expenses, and costs in its own name by any means available for the enforcement of a judgment for debt. LISA McCAFFREY HICKERT shall be responsible for her own attorney's fees, expenses and costs incurred as a result of legal representation in this case SAVE AND EXCEPT the attorney's fees ordered to be paid by BRIAN MARTIN HICKERT.

BRIAN MARTIN HICKERT shall be responsible for his own attorney's fees, expenses, and costs incurred as a result of legal representation in this case.

3

At the hearing on this matter, Ms. McCaffrey testified that she still feels responsible for all fees owed to Langley & Banack, Inc. and wants to see the firm paid those fees. The court understands, and appreciates, her desire to see the attorneys who represented her, in what was apparently a long and contentious divorce, paid in full. However, the Decree of Divorce relieved her of that obligation to the extent of the $40,907.55 awarded to Langley & Banack, Inc. Since she does not own that claim, it was improperly included in her Proof of Claim in this Bankruptcy proceeding and the objection to that portion of the claim will be granted. Consequently it is not necessary for the court to determine at this time whether the fees awarded to Langley & Banack, Inc. should be considered a domestic support obligation.

Ms. McCaffrey testified that the balance of her claim for attorney's fees ($69,709.00 minus $40,907.22 = $28,801.45) resulted from actions necessary after the court announced its ruling on April 1, 2010 and before the signing of the Decree of Divorce on June 29, 2010. There was no evidence of a court awarding her those fees as a domestic support obligation. Mr. Hickert's objection quoted above does not contest the amount of those fees. Therefore $28,801.45 will be allowed as a general unsecured claim in Mr. Hickert's case.

IRA Account: Mr. Hickert's second objection is:

> [Mr. Hickert] objects to the inclusion of $17,000.00 for the liquidation of [Mr. Hickert's] IRA in [Ms. McCaffrey's] proof of claim, give[n] that on the date the divorce decree awarding [Ms. McCaffrey] ½ of said IRA was entered, the value of the USAA IRA account was merely $23.55. As such, [Ms. McCaffrey's] share of [Mr. Hickert's] IRA should be limited to $11.78

Paragraph W-7 on page 17 of the Decree of Divorce awards to Ms. McCaffrey "One half (1/2) of the individual retirement account standing in the name of Brian M. Hickert at USAA Federal Savings Bank, account no. xxxx9238." Exhibit D-3 is a statement of that account. The March 31, 2010 value of that account was $14,424.99 and the June 30, 2010 value was $23.55. The difference represents sales of stock in the account on April 5, 2010 and withdrawal of funds from the account on May 20 and 28, 2010. Since Ms. McCaffrey's name was not on the account, the withdrawals had to have been made by Mr. Hickert. Ms. McCaffrey's claim lists "Liquidation of IRA" at $17,000.00.

Mr. Hickert testified that he used the funds for living expenses. His objection asserts that the effective date of the divorce was the date the decree was signed on June 29, 2010. This, however, overlooks that the court rendered its decree on April 1, 2010 and the rights of the parties vested at that time. Mr. Hickert was not free to remove the half of the account that belonged to Ms. McCaffrey as of the court's April 1 ruling. Therefore Ms. McCaffrey is awarded a general unsecured claim for $7,212.50 representing her half of the account on the date of the state court's pronouncement.

USAA Whole Life Policy: Mr. Hickert's third objection is:

> [Mr. Hickert] objects to the inclusion of $11,000.00 for the cash value of [Mr. Hickert's] USAA Whole Life Policy, given that on the date the divorce decree awarding [Ms.

McCaffrey] ½ of said whole life policy was entered the cash value of said policy was $0.00.

Paragraph W-11 on page 8 of the Decree of Divorce awards to Ms. McCaffrey "One half (1/2) of any cash surrender values of any and all policies of life insurance insuring the husband's life." Her claim lists life insurance at $11,000. The only life insurance policy discussed in evidence is Exhibit D-7. Page 2 of the exhibit shows a value of the policy on March 10, 2010 of $18,810.81. The account is in Mr. Hickert's name. He closed the account on April 9, 2010 and withdrew the funds. Therefore, Ms. McCaffrey is awarded a general unsecured claim for $9,405.41, representing her half of the cash surrender value of the insurance on the date the state court announced its decision. Page 3 of Exhibit D-7 indicates that on April 9, 2010, $5,705.58 was used to pay off a loan. Part of the funds from the surrendered policy may have been used to pay off that loan, but that loan payoff falls on Mr. Hickert. The state court awarded her one half of the cash surrender value, so she should not be charged with any portion of the loan.

Vestivo Debenture: Mr. Hickert's fourth objection is:

[Mr. Hickert] objects to the inclusion of $5,000 for the Vestivo Debenture, given that, the value of this investment is unknown because said value depends on the performance of the company Advent GX Corp. and that [Ms. McCaffrey] has the same ability as [Mr. Hickert] to access and/or liquidate her 50% interest in the investment.

Ms. McCaffrey asserts that she does not have any paperwork on this investment and thus cannot realize her portion of it. This is a property division issue which must be resolved by the state court; it is beyond the jurisdiction of this court. The court therefore denies her claim in this regard.

Medical Co-Pay: Mr. Hickert's fifth objection is:

[Mr. Hickert] objects to [Ms. McCaffrey's] attempt to include $1,171.68 for Medical Co-Pays given that [Mr. Hickert] has presented [Ms. McCaffrey] with Medical Co-Pays in an amount greater than the amount claimed by [Ms. McCaffrey], which [Ms. McCaffrey] refused to reimburse [Mr. Hickert] for.

Mr. Hickert's objection amounts to a set off. He did not introduce any evidence to support the set off. Ms. McCaffrey testified that her claim is for his one half of the cost of taking the children to the doctor. Mr. Hickert says that under the Decree of Divorce he is not obligated for that, but he conveniently ignores the Parenting Plan [hand lettered page 10] which is a part of the Decree of Divorce. Under the Parenting Plan he is responsible for one half of each child's medical expenses. His obligation is a domestic support obligation as defined in §101(14) and is entitled to a first priority under §507(a)(1)(A) in the amount of $1,171.68.

House repairs: Mr. Hickert's sixth objection is:

[Mr. Hickert] objects to [Ms. McCaffrey's] attempt to include $1,730.12 for repairs to [Ms. McCaffrey's] former homestead, given that [Mr. Hickert's] divorce decree clearly

5

states that [Ms. McCaffrey] was solely responsible for the repair and maintenance of the property while she enjoyed sole use and possession of the property in question. *See Divorce Decree, pg # 10.*

On page 9, the Decree of Divorce states that the parties have listed the property at 8260 Tradition Trail, San Antonio, Texas[3] for sale on February 23, 2010. On page 10 the decree requires each party to pay one half of each of the two liens on the property until it is sold. Ms. McCaffrey says that Mr. Hickert has quit paying his half of the first lien note, but she has been paying that note in full to avoid foreclosure. She feels that he should pay one half of the costs of repairs and upkeep on the property. She still resides in the property. The Decree of Divorce provides on page 10 that "[Ms. McCaffrey] shall have the exclusive right to enjoy the use and possession of the premises until closing. All maintenance and repairs necessary to keep the property in its present condition shall be paid by [Ms. McCaffrey]."

Because of the explicit terms of the Decree of Divorce, her claim for repairs must be denied. Her concern about his not making the mortgage payments is something that will have to be addressed to the state court. Consequently, the court denies her claim in this Bankruptcy case based on that matter.

Daughter's tuition: Mr. Hickert's seventh objection is:

> [Mr. Hickert] objects to the inclusion of $1,072.50 for [Mr. Hickert's] adult daughter's tuition, given [Mr. Hickert's] divorce does not impose any legal liability against Mr. Hickert for payment of said fees.

Ms. McCaffrey testified that "He should pay it," but does not point to any portion of the Decree of Divorce where he is ordered to pay it. Page 10 (hand lettered) of the Parenting Plan states that the daughter, Rachel Hickert is 18 years of age. Ms McCaffrey's claim states that it is for tuition to the University of Incarnate Word. From the amount listed, the court assumes the requested amount represents half of the tuition. The court is surprised that Mr. Hickert did not pay at least half of the tuition for his daughter at the time she enrolled in school. However, since he is not obligated by the divorce decree to pay his daughter's tuition, Ms. McCaffrey's claim for reimbursement must be denied.

Other items: Mr. Hickert's eighth objection is:

> [Mr. Hickert] objects to the amounts listed as Home Equity Loan $26,675.00; Wells Fargo Mortgage $25,462.82; Consolidated Freightways Trust (2010 YTD) $181.85; Consolidated Freightways Trust (2009) $1,227.26 for; (sic) and Interest in Advent GX Corp. $644.44, given that [Ms. McCaffrey's] proof of claim fails to establish what those amounts represent and/or that [Mr. Hickert] has any legal liability to pay Ms. McCaffrey for said amounts.

---

[3] In her Bankruptcy petition, Ms. McCaffrey listed the property as being in Boerne, Texas.

Mr. Hickert said he was not paying the home equity loan nor the Wells Fargo mortgage on the house because he could not afford it. On page 10 of the Decree of Divorce, both parties are required to pay half of each of those obligations until the house is sold. His failure to make those court ordered payments is a matter for the state court or something to be settled when the property is sold. Consequently, the court denies her claims based on this matter in this Bankruptcy case.

Mr. Hickert stated that Consolidated Freightways was in bankruptcy. It is not clear that the bankruptcy of the company adversely affected its retirement plans. In any event, he did not deny getting payments from the retirement plan for 2009 and 2010. Paragraph W-6 on page 7 of the Decree of Divorce awards her one half of those accounts. Consequently she is awarded unsecured claims against him for $181.85 and $1,227.26.

Paragraph W-13 on page 8 of the Decree of Divorce awards Ms. McCaffrey one half of the Vestivo debentures with Advent GX. Mr. Hickert did not deny receiving interest on those debentures in 2009. Consequently Ms. McCaffrey is awarded an unsecured claim against Mr. Hickert for $644.44.

Setoff: Mr. Hickert's ninth objection is:

> [Mr. Hickert] further asserts that [Ms. McCaffrey's] claim is subject to setoff for the value of over $10,160.00 in items which [Mr. Hickert's] divorce decree ordered that [Mc. McCaffrey] turn over to [Mr. Hickert], but which have to this date not been turned over by [Ms McCaffrey].

No evidence was offered concerning this objection. In any event, disputes concerning the division of property are matters for the state court.

In testimony Mr. Hickert offered an objection to Ms. McCaffrey's claim that he owed her $422.00 in HOA Fees. Presumably this refers to home owners' association dues with respect to the house. His written objection did not mention that matter. Consequently she will be awarded an unsecured claim against him for $422.00.

In this order, the court has made a number of separate awards. For convenience of administration, the Chapter 13 Trustee is permitted to treat these matters as one, two or more claims, as best suits the trustee's handling of these matters.[4]

---

[4] It must be emotionally devastating to the children of the parties to see their parents continuing to fight after the divorce. It is also very expensive for the parties. The parties need to start acting like adults and resolve their differences so they can begin rebuilding their separate lives. Hopefully they will leave their emotions outside the room and meet with a marital counselor to help them solve their financial problems in light of current circumstances. One thought to consider: in view of the current depressed housing market, the fact that Ms. McCaffrey remains in the family home, the fact that she [as shown in her Bankruptcy petition] is in the real estate business, the fact that she is responsible for the repairs on the house, and the fact that Mr. Hickert has not paid his share of the liens on the property, perhaps Mr. Hickert could convey the property to Ms. McCaffrey in exchange for a release of his obligations under the Decree of Divorce to half of the taxes, insurance and mortgage payments and her assertion that he owes half of the HOA fees with respect to the property.

######

######